UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHARON VIVEIROS,              :
          Plaintiff,          :
                              :
     v.                       :      CA 06-419 T
                              :
COMMISSIONER OF SOCIAL SECURITY, :
          Defendant.          :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act").  Plaintiff Sharon Viveiros ("Plaintiff") has filed a motion for judgment based on the pleadings.  The Commissioner, Michael J. Astrue ("Defendant"), has filed a motion for an order affirming his decision.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record.  Accordingly, based on the following analysis, I recommend that Plaintiff's Motion for Judgement (Document ("Doc.") #13) ("Motion for Judgment") be denied and that Defendant's Motion for Order Affirming the Decision of the Commissioner (Doc. #14) ("Motion to Affirm") be granted.

**Facts and Travel**

On March 18, 2004, Plaintiff filed an application for DIB, alleging disability since September 24, 2003, (Record ("R.") at

56-58), because of acid reflux, severe headache, dizziness when standing, and double vision, (R. at 17[1]).  Her application was denied initially, (R. at 35-37), and upon reconsideration, (R. at 40-42).  Plaintiff requested an administrative hearing.  (R. at 43)  On December 13, 2005, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, and a vocational expert testified.  (R. at 296-349)  The ALJ issued a decision on March 17, 2006, finding that Plaintiff was not disabled.  (R. at 32)  The Appeals Council denied Plaintiff's request for review on June 15, 2006, (R. at 7-9), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 7).  Plaintiff thereafter filed this action for judicial review.

### Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

### Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an

---

[1]   The ALJ noted in her decision that Plaintiff's original Disability Report (Form 3368) is not in the record.  (R. at 17 n.1)

[2]   The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to

---

[3]     Plaintiff is insured through December 31, 2008.  (R. at 15)

do basic work activities."[4]  20 C.F.R. § 404.1521(a) (2008).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  See Seavey, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national

---

[4]    Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2008).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

economy that the applicant can still perform." Freeman v.
Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since the alleged onset
of her disability on September 24, 2003, (R. at 17); that
Plaintiff's degenerative disc disease of the cervical spine,
double vision, and depression were severe impairments but not
severe enough to meet or equal any listed impairment, (R. at 17-
18); that Plaintiff had the residual functional capacity ("RFC")
for a wide range of light work that did not require: climbing
ladders, ropes, scaffolds, etc., stooping, crouching, or crawling
more than occasionally; driving or other activities requiring
depth perception; or concentrated exposure to temperature
extremes, pulmonary irritants, such as smoke, fumes, noxious
odors, gases, etc., or hazards, such as dangerous machinery or
unprotected heights, (R. at 18); that this RFC precluded
performance of Plaintiff's past relevant work, (R. at 30); but
that a significant number of jobs existed in the national economy
which she could perform, (id.); and that Plaintiff was not under
a "disability," as defined by the Act, at any time through the
date of the decision, (R. at 32).

### Errors Claimed

Plaintiff appears to allege the following errors:[5] 1) that
the ALJ improperly considered Plaintiff's reluctance to have

---

[5]     Precise identification of the errors claimed by Plaintiff is
hindered by her failure to explicitly state them in topic headings
utilizing declarative sentences.  Her use of two or three word topic
headings ("Double Vision," "Combination of Impairments," and
"Vocational Expert") only identifies the subject being discussed and
does not communicate the error alleged with respect to that topic.
Thus, the Court's identification of "Errors Claimed" is based on the
arguments advanced by Plaintiff within each topic heading.

surgery in finding that Plaintiff's double vision was "not as
bothersome or as limiting as she has alleged," (R. at 21); 2)
that the ALJ failed to properly consider the effect of the
combination of Plaintiff's impairments and thereby violated
Social Security Ruling 86-8; and 3) that the hypothetical
question(s) posed to the VE by the ALJ did not accurately reflect
Plaintiff's impairments and limitations.

## Discussion

### I.   Plaintiff's Reluctance to Have Surgery

The ALJ concluded her multi-paragraph discussion of
Plaintiff's double vision, (R. at 19-21), with the statement that
Plaintiff's "reluctance to consider surgery that has been
strongly recommended to address her vision problems indicates
that this problem is not as bothersome or as limiting as she has
alleged," (R. at 21).  Focusing on this statement, Plaintiff
posits that the ALJ implicitly found that her double vision was
disabling because, according to Plaintiff:

> such a finding [of failure to follow prescribed
> treatment] is only available where the evidence
> establishes that the individual's impairment precludes
> engaging in substantial gainful activity[] (SGA)[,] has
> lasted for 12 continuous months[,] and the treatment is
> clearly expected to restore capacity to engage in SGA and
> finally that the evidence discloses that there has been
> a refusal to follow the prescribed treatment.

The Plaintiff's Brief in Support of Motion for Judgement
("Plaintiff's Mem.") at 7[6] (citing Social Security Ruling ("SSR")
82-59).  In other words, Plaintiff appears to contend that the
ALJ found that her double vision was disabling and that Plaintiff
was ineligible for DIB only because she refused to follow
prescribed treatment.

_____

[6]     The page numbers cited in Plaintiff's memorandum refer to the
page numbers created by the Court's Case Management/Electronic Case
Filing (CM/ECF) system.

The ALJ's decision does not support the interpretation Plaintiff suggests.  The ALJ plainly did not find that Plaintiff's double vision was disabling, (R. at 17-32), and SSR 82-59, which Plaintiff cites in support of this argument, applies only to "[i]ndividuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work ...."  SSR 82-59, 1982 WL 31384, at *1 (S.S.A.). As Plaintiff's argument lacks a basis in fact, the Court declines to consider it further.  See Adams v. Apfel, No. 99 C 8314, 2001 WL 321092, at *3 (N.D. Ill. Mar. 30, 2001)(declining to delve into the legal intricacies of plaintiff's argument because it lacked basis in fact).

Moreover, the failure to avail oneself of available treatment is a factor which an ALJ may properly consider in weighing subjective complaints such as how Plaintiff's double vision impacts her functioning.  See Poland v. Apfel, No. CIV. C-99-128-B, 2000 WL 36950, at *9 (D.N.H. Dec. 22, 1999)(rejecting argument that ALJ's adverse credibility determination based upon plaintiff's decision not to undergo surgery violated regulations where ALJ "did not use [plaintiff]'s rejection of surgical treatment as a dispositive basis for denying him benefits. Rather, the ALJ used it as an additional indication that [plaintiff]'s conduct was inconsistent with the severity of the pain he alleged."); see also Thunder Club v. Astrue, No. CIV. 07-5093-RHB, 2008 WL 2987195, at *3 (D.S.D. Aug. 4, 2008)("the ALJ properly cited plaintiff's refusal to consider surgical options as a basis for the rejection of her credibility"); cf. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991)("the Social Security regulations specifically provide that to qualify for benefits a claimant must follow prescribed treatment"); 20 C.F.R. § 404.1529 (2008); but see Smith v. Barnhart, No. 06-1157 MLB, 2007 WL 461472, at *5 (D. Kan. Feb. 13, 2007) ("Before the ALJ may rely on [claimant's] failure to

pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse.").[7]

Plaintiff testified that she was hesitant to have another surgery "because I have a lot of other things wrong with me now." (R. at 301)  However, the record does not show that Plaintiff's other various ailments pose risk factors for eye muscle surgery. No physician has indicated that Plaintiff's other medical conditions are a contraindication for the surgery which has been

_____

[7]    Smith v. Barnhart, 2007 WL 461472, (D. Kan. Feb. 13, 2007), is based on Tenth Circuit law, see id. at *5 (citing Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)).  In the absence of specific instruction from the First Circuit, this Court declines to apply a requirement not mandated by First Circuit law in determining whether an ALJ erred in determining credibility.  However, even if the Court were to apply the law stated in Smith, here the ALJ substantially complied with the requirements stated therein.
   Relevant to the first and second requirements, the ALJ noted that Plaintiff's ophthalmologist, Dr. Glenn Bulan, had indicated that Plaintiff's prognosis was good and that eye muscle surgery could reasonably be expected to result in full or partial recovery, (R. at 20); see also (R. at 229).  The ALJ accurately stated that Plaintiff's surgeon, Dr. Richard L. Fabian, had also recommended eye muscle surgery. (R. at 20); see also (R. at 163).  With respect to the third requirement, the ALJ observed that the surgery had been scheduled for May 28, 2004, but Plaintiff subsequently canceled it, saying she was not feeling well, (R. at 21); see also (R. at 218).  The ALJ also observed that Plaintiff had stated during a July 7, 2004, consultative examination that she had been told that the surgery was not certain to help and she was reluctant to undergo further surgery.  (R. at 21); see also (R. at 180); cf. SSR 82-59, 1982 WL 31384, at *4 ("Attendant to allegations of fear, it is not uncommon to see surgery refused on the grounds that the absolute success of such treatment has not been 'guaranteed.'  No physician can guarantee the results of a major surgical procedure since any surgery generally entails some degree of risk ... such reason[] for nonacceptance of surgical treatment will not, in and of itself, negate a finding of 'failure.'").  As for the fourth requirement, the ALJ implicitly found that Plaintiff's refusal was not justified.

recommended by both her ophthalmologist and her surgeon.  (R. at 169, 223)

Also supportive of the ALJ's finding that Plaintiff's double vision is not as bothersome or as limiting as she indicated is the fact that Plaintiff apparently failed to try other non-surgical methods of alleviating this problem.[8]  Dr. Bulan indicated that the double vision could be addressed by surgery, by using prism glasses, or by wearing an eye patch.  (R. at 223, 227)[9]  Although wearing an eye patch would result in monocular vision and adversely impact depth perception, the ALJ specifically excluded activities requiring depth perception in determining Plaintiff's RFC.  (R. at 18)

Lastly, it bears noting that Plaintiff's reluctance to consider surgery for her double vision was not the only reason given by the ALJ for finding that Plaintiff had overstated the effects of this impairment, thereby diminishing her credibility. The ALJ cited the fact that although Plaintiff "testified that blurred vision always occurs when she has double vision [R. at 342], it does not appear that [Plaintiff] alleged blurred vision to any of her doctors, including Dr. Bulan, her ophthalmologist, and she has not been diagnosed with a condition [that] would be expected to cause blurred vision."  (R. at 21)  Again citing Plaintiff's testimony "that she experienced double vision most of the time ...," (id.), the ALJ noted that Plaintiff had reported somewhat inconsistently to Dr. Bulan that double vision affects

---

[8]   A Medical Consultant's Review of Physical Residual Functional Capacity Assessment dated August 10, 2004, states Plaintiff's visual limitations as being: "Diplop[]ia if eye not patched.  If patched[,] loss of depth perception, but [decreased] depth perception also if not patched."  (R. at 176)

[9]   Dr. Bulan's October 26, 2003, office note indicates that Plaintiff's options are: 1) patch, 2) prism, and 3) "do nothing."  (R. at 227)  Dr. Bulan also wrote: "pt. aware may recover some function [with]out surg.  Can tape lid shut at night if needed.  – no surgery at this time."  (Id.)

her mostly at close work, id.; see also (R. at 225).  The ALJ additionally observed that Plaintiff's "visual acuity does not indicate that she experiences significant blurred vision."  (Id.) This observation is supported by the ALJ's citation of Dr. Bulan's findings that Plaintiff's visual acuity without correction was 20/30 on the right and 20/40 on the left, (id.); see also (R. at 224), and that her visual acuity with correction was 20/25, (R. at 21); see also (R. at 216).  The ALJ also cited the fact that Plaintiff's double vision had not prevented her from traveling by air to Florida in June of 2004.  (R. at 21); see also (R. at 261).

In short, the ALJ did not err by including Plaintiff's refusal to have eye surgery among the reasons she found that Plaintiff's double vision was not as bothersome or as limiting as Plaintiff claimed.  To the extent that non-First Circuit law may suggest that such inclusion was improper, such error was harmless in light of the other evidence in the record which supports the ALJ's conclusion.  Plaintiff's first claim of error is, therefore, rejected.

## II.  Consideration of Combination of Impairments

Plaintiff argues that the ALJ failed to consider her impairments in combination in violation of SSR 86-8.  See Plaintiff's Mem. at 9-11.  While she acknowledges that the ALJ discussed her "many health problems ...," id. at 10, and also admits that "many of these impairments[,] analyzed individually, do not, by themselves disable her," id., Plaintiff asserts that "[i]t is the combination of these 'non-severe' impairments in association with the several recognized 'severe' impairments that render her disabled from all substantial gainful activity," id. The ALJ erred, according to Plaintiff, by isolating and minimizing each of her less than severe impairments and that this deprived Plaintiff "of consideration of the possible combined affects of all her difficulties."  Id. at 11.

10

SSR 86-8 provides in relevant part:

When assessing the severity of multiple impairments, the adjudicator must evaluate the combined impact of those impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone. When multiple impairments, considered in combination, would have more than a minimal effect on the ability to perform basic work activities, adjudication must continue through the sequential evaluation process.

SSR 86-8, 1986 WL 68636, at *2 (S.S.A.).

The Court sees no error in the ALJ's consideration of Plaintiff's multiple health problems and the ALJ's compliance with SSR 86-8. Early in her decision, the ALJ accurately cited the law applicable at step two when there are both severe and non-severe medical impairments: "If a medically severe combination of impairments exists, the combined impact will be considered throughout the disability determination process, even those that are not severe (20 C.F.R. § 404.1523 and SSR 86-8)." (R. at 16) Later in the decision, the ALJ found that "claimant's impairments, considered singly or in combination, are not of a level of severity to meet or equal any of the impairments detailed in the Listing of Impairments ...," (R. at 18), thereby again demonstrating her awareness of the requirement to consider the combined effect of Plaintiff's impairments. The ALJ also noted that "physicians certified by the state agency have reviewed the medical evidence and determined that none of the claimant's impairments, either singularly or in combination, are medically equivalent to any listed impairments." (R. at 18) The ALJ also recognized that in determining Plaintiff's RFC she had to "consider all of the claimant's impairments, including impairments that are not severe (20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 86-8p)." (R. at 16)

The ALJ's decision is noteworthy for its unusual length, more than seventeen single-spaced pages, and detailed review of the evidence pertaining to each of Plaintiff's multiple health problems. (R. at 15-32)  Plaintiff appears to contend that because the ALJ discussed her problems or impairments in sections preceded by headings such as "Chronic aching in the neck, back, shoulder and leg," (R. at 19), "Double/blurred vision, right-sided weakness," (R. at 19), "Severe headache (migraine) and sleep disturbance," (R. at 21), etc., that the ALJ disregarded her duty to consider the combined effects of Plaintiff's impairments. The Court is unpersuaded that this is so. Given Plaintiff's numerous health complaints, it is entirely understandable that the ALJ would discuss the evidence utilizing an organizational format like the one she chose. The Court declines to infer from this format that the ALJ did not consider the effect of Plaintiff's impairments in combination. See Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990)("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."); Bryan v. Barnhart, No. 04-191, 2005 WL 273240, at *2 (E.D. Pa. Feb. 2, 2005)(rejecting argument that ALJ did not consider the impact of the combination of impairments on plaintiff's ability to function where the ALJ analyzed and discussed the severity of each of plaintiff's impairments, thereby "evidenc[ing] that she was reviewing the impact of the combination of [p]laintiff's impairments").

Plaintiff asserts that her headaches "when considered in combination with her GERD,[10] sleeplessness, fatigue and three severe impairments surely combine to suggest a significantly disabled person, one entitled to benefits." (R. at 10)(internal

---

[10]    Gastroesophageal reflux disease.

quotation marks omitted)  However, in making this argument
Plaintiff is, in effect, asking the Court substitute its judgment
for that of the Commissioner, something which it may not do, see
Brown v. Apfel, 71 F.Supp.2d 28, 30-31 (D.R.I. 1999).
Accordingly, Plaintiff's conclusion is rejected.

In sum, the Court is unpersuaded that the ALJ failed to
consider the combined effect of Plaintiff's impairments.  The
fact that the ALJ concluded that these impairments (both severe
and nonsevere), considered separately and in combination, did not
render Plaintiff disabled from all employment is a determination
as to which the Court may not substitute its judgment for that of
the Commissioner.  See Rodriguez v. Sec'y of Health & Human
Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he determination of
the ultimate question of disability is for [the Commissioner],
not for the doctors or for the courts.")(citing Richardson v.
Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971)).
Accordingly, Plaintiff's second claim of error is rejected.

## III.  Hypothetical Question(s) Posed to Vocational Expert

Plaintiff's final claim of error is that the hypothetical
question(s) posed by the ALJ to the VE did not accurately or
fully reflect Plaintiff's impairments and limitations.  See
Plaintiff's Mem. at 11-18.

The initial hypothetical posed by the ALJ was:

I'd like you to consider a person of [Plaintiff's] age,
education and vocational profile.  This person could do
light work.  She would be limited to no more than
occasional stooping, crouching, crawling and she should
not be required to climb ladders or ropes or scaffolds or
such as that.  She should not be required to drive **or
perform other activities requiring depth perception.** She
should avoid concentrated exposure to temperature
extremes, pulmonary irritants such as gases, fumes, dust
and things of that nature and she should not have
concentrated exposure to hazards such as unprotected
heights or dangerous machinery.  Are there jobs that this
person could perform?

13

(R. at 346)(bold added).

In answering, the VE identified the following jobs:

A job such as inspector, approximately 1,400 in Rhode Island and Southeastern Mass and approximately 100,000 in the United States. A general production laborer, approximately 6,000 in Rhode Island and Southeastern Mass and approximately 500,000 in the United States and a packer or bagger type of position, approximately 2,000 in Rhode Island and Southeastern Mass and approximately 170,000 in the United States.

(R. at 347)

The ALJ then added the limitation that "this person should work at a job that is unskilled, and routine and repetitive in nature ...." (Id.) The VE responded that this limitation would not affect the large number of jobs which he had identified. (Id.)

Plaintiff contends that this hypothetical (the answer to which formed the basis for the ALJ's finding that there was a significant number of jobs in the national economy which Plaintiff could perform) was deficient in three respects. First, it did not take into account her mental limitations. See id. at 12-13. Second, it failed to include all of her visual limitations. See id. at 14. Third, it omitted the requirement (included by the ALJ in a subsequent hypothetical) that Plaintiff could be "off task more than 1 unscheduled hour a day or absent from the work place more than 2 days a month due to fatigue or weakness from any other symptom reasonably arising from impairments such as those alleged by [Plaintiff]." Id. at 15 (underlining omitted).

## A. Mental Limitations

Plaintiff argues that the hypothetical "did not ask the VE to consider the mental demands of unskilled work and the likely limitations [Plaintiff] would have because of her major depression." Plaintiff's Mem. at 13 (internal quotation marks

14

omitted).  In particular, Plaintiff faults the ALJ for not
including in her hypothetical that Plaintiff was moderately
limited in her ability to maintain social functioning and mildly
limited in the areas of concentration, persistence, and pace, see
id. at 13-14.  Plaintiff asserts, without citing any authority,
that inclusion of these limitations would have had an impact on
the VE's opinion.  See id. at 14.

 Given that the VE indicated the large number of jobs which
he had identified were unskilled, the Court is unpersuaded that
the moderate and mild mental limitations Plaintiff cites would
significantly impact the number of unskilled jobs the VE
identified.  See Falcon-Cartagena v. Comm'r of Soc. Sec., 21 Fed.
App. 11, 14, 2001 WL 1263658, at *2 (1st Cir. 2001)(unpublished
opinion)(concluding that claimant's mental impairment did not
affect, more than marginally, the relevant occupational base
where "claimant was at the most moderately limited in areas of
functioning required for unskilled work"); Concepcion-Morales v.
Comm'r of Soc. Sec., 81 F.3d 147, 1996 WL 141786 (1st Cir. 1996)
(unpublished opinion)(affirming ALJ's finding that plaintiff was
capable of the full range of unskilled work where "evidence shows
that claimant had at most moderate limitations in his ability
[to] meet the basic demands of unskilled work"); Brown v. Apfel,
71 F.Supp.2d 28, 39 (D.R.I. 1999)(finding substantial evidence
supported ALJ's conclusion that plaintiff's occupational base
would not be significantly affected or reduced by his mental
impairments "[g]iven the large occupational base available to
plaintiff and the findings that plaintiff would not be
significantly limited in almost every functional area relevant to
performing jobs available in this base, particularly unskilled
work"); see also Bordelon v. Astrue, 2008 WL 2444470, at *3 (5th
Cir. June 17, 2008)(rejecting claim of error where plaintiff
"failed to show any prejudice arising from the hypothetical
question's omission of her 'moderate' concentration, persistence,

15

and pace limitations"); <u>Heller v. Barnhart</u>, 126 Fed. App. 313, 2005 WL 643360, at *1 (7th Cir. 2005)("Although ... the ALJ did not include her findings that [plaintiff] had moderate limitations in concentration in her hypothetical to the vocational expert ... there is nothing to suggest that an employee who has trouble concentrating could not work at the type of unskilled repetitive jobs the vocational expert identified."); <u>Comeaux v. Astrue</u>, No. 2:06-cv-1635, 2007 WL 4759401, at *3 (W.D. La. Dec. 11, 2007) ("Unskilled work would not be incompatible with a moderate limitation in concentration, persistence, and pace"); <u>cf.</u> <u>Crumb v. Barnhart</u>, No. 06-1156-JTM, 2007 WL 1223916, at *8 (D. Kan. Apr. 11, 2007)(noting that "[t]he ability to maintain attention and concentration for extended periods is not listed in either SSR 96-9P or SSR 85-15 as a mental activity required by unskilled work").  Accordingly, Plaintiff's argument is rejected.

### B.  Visual Limitations

The ALJ, after posing her initial hypothetical questions and adding the requirement that the jobs be unskilled and routine, inquired whether the jobs the VE had identified would require fine visual acuity.  (R. at 347)  The VE responded affirmatively. (<u>Id.</u>)  Citing this response, Plaintiff charges that the ALJ "ignored her own expert's opinion and found [Plaintiff] had thousands of alternative jobs available."  Plaintiff's Mem. at 14.  Plaintiff faults the ALJ for "simplify[ing] the visual impairment to be a difficulty with 'depth perception.'"  <u>Id.</u>

Plaintiff cites nothing in the record to support her implicit contention that her double vision affects fine visual acuity.  The record does not show a substantial impairment in visual acuity in general.[11]  As previously noted, Dr. Bulan

---

[11]   Although difficult to read, the August 10, 2004, medical consultant's report appears to indicate that Plaintiff's visual acuity is "WNL [within normal limits]."  (R. at 177)

reported that Plaintiff had 20/30 vision in her right eye and 20/40 vision in her left eye without correction, (R. at 223, 224), and 20/25 and 20/30, respectively, with correction, (R. at 224).  In determining Plaintiff's visual limitations for the hypothetical, the ALJ was entitled to rely upon the opinion of the DDS reviewing physician that Plaintiff's near acuity and far acuity were "unlimited," (R. at 170), and that only her depth perception was affected by her double vision, (id.); cf. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(recognizing that the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert).  Accordingly, the Court finds no error in the fact that the ALJ's finding that there were a significant number of jobs which Plaintiff could perform was based on a hypothetical question which omitted the limitation that the jobs not require fine visual acuity.

### C.  Other Limitations

After asking the VE the hypothetical questions and conditions already discussed above, the ALJ asked:

> If this person has to be off task more than one unscheduled hour a day or absent from the workplace entirely, more than two days a month due to fatigue or weakness or any other symptom reasonably arising from impairments such as those alleged by Ms. Viveiros, how would that affect the availability of the jobs that you've named?

(R. at 347-48)  The VE answered that the person could not sustain the jobs he had identified and that there were no other jobs available for a person with such limitations.  (R. at 348)

Plaintiff argues that the above additional limitation was "reasonable ... based on the entirety of the record." Plaintiff's Mem. at 15.  In particular, Plaintiff cites her

17

headaches and sleeplessness as supportive of the limitation.  See id.  Plaintiff additionally suggests that a non-examining state medical consultant opined that Plaintiff is only able to carry out "simple tasks for 2 hour periods over the course of an 8 hour day."  Id. (citing R. at 205).

The ALJ devoted an entire section of her decision to Plaintiff's headaches and sleep disturbance, and the discussion extends over almost two full pages.  (R. at 21-23)  The ALJ noted Plaintiff's testimony that since she stopped taking amitriptylene she gets headaches approximately twice per week, but accurately observed that "there is nothing in the record to indicate that she currently experiences this frequency of headaches."  (R. at 22)  Expanding on this, the ALJ stated:

> It does not appear that the claimant sought or received treatment for headache from January through August 2005. When she was seen by Dr. Yufit for the first time September 9, 2005, she was not taking amitriptylene, and she did not report headaches, either as history or as a current complaint.  Based on the medical evidence, it is reasonable to conclude that neither the frequency nor the severity of headaches experienced by the claimant have increased beyond the two or three monthly noted by Dr. Rajan in January 2005 and that some, if not most, headaches are quickly aborted by Axert medication.  Thus, they would not be expected to impose significant limitations on the claimant's activities, and headache is not considered to be a severe impairment.

(R. at 22-23)  Plaintiff has not disputed the accuracy of any of the ALJ's factual statements regarding Plaintiff's headaches.

Although Plaintiff appears to take issue with the ALJ's finding that "there is no medically determinable sleep impairment," Plaintiff's Mem. at 15 (quoting R. at 23), Plaintiff again does not dispute any of the factual statements made by the ALJ in explaining this finding, (R. at 23).  Rather, Plaintiff cites her testimony that she is "very, very weak, tired, fatigued ...."  Id. (quoting R. at 302).  However, the ALJ determined that

18

Plaintiff's statements were "inconsistent with the objective evidence that does not demonstrate the existence of pain and limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis." (R. at 30) The ALJ further found that Plaintiff's "allegations [are] not fully credible," (id.), and, as noted earlier in this Report and Recommendation, the ALJ gave specific reasons for this finding, see Discussion Section I. supra at 9-10.

The ALJ was not required to accept Plaintiff's testimony regarding the frequency of her headaches and the degree of her fatigue. Therefore, the ALJ did not err by not including limitations attributable to these complaints in the hypothetical upon which she relied in determining that there were jobs in the national economy which Plaintiff could perform.

Lastly, Plaintiff appears to misapprehend the opinion of John J. Warren, Ph.D. ("Dr. Warren"), a non-examining state medical consultant. (R. at 205) Dr. Warren did not opine that Plaintiff is "only able to carry out 'simple tasks for 2 hour periods over the course of an 8 hour day ...,'" Plaintiff's Mem. at 15, as Plaintiff suggests. Rather, Dr. Warren opined that: "Claimant [is] able to sustain the mental demands associated with carrying out simple tasks for two hour periods over the course of an eight hour day and forty hour workweek within acceptable attention, concentration, pace, [and] persistence tolerances." (R. at 205) Thus, Dr. Warren concluded that Plaintiff had the attention, concentration, persistence, and pace to perform simple tasks, such as those involved in simple, unskilled work, for two-hour periods of time — not just for two hours during the entire day. Most jobs have a morning break, generally after about two hours, then a lunch break around the middle of the workday, and an afternoon break about two hours before the end of the workday.

In sum, the Court finds no error in the ALJ's decision ultimately not to rely upon the limitations contained in her

final hypothetical to the VE in determining whether there was a significant number of jobs which Plaintiff could perform. Plaintiff's argument to the contrary is, therefore, rejected.

### Summary

The ALJ did not err by considering Plaintiff's reluctance to have eye surgery in assessing the degree of limitation resulting from Plaintiff's double vision.  The ALJ considered the effect of Plaintiff's impairments in combination.  The hypothetical question (on which the ALJ based her determination that there was a significant number of jobs which Plaintiff was still able to perform) accurately reflected Plaintiff's impairments and limitations as determined by the ALJ, and the ALJ was not required to include the additional limitations advocated by Plaintiff in her memorandum.  The Court further finds that the ALJ's decision is supported by substantial evidence in the record.

### Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.  I therefore recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Judgment be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 24, 2008